Filed 2/23/26  Javidzad v. Adler Construction CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| STEVE JAVIDZAD et al.,<br><br>Plaintiffs, Cross-Defendants, and Appellants,<br><br>v.<br><br>ADLER CONSTRUCTION et al.,<br><br>Defendants, Cross-Complainants, and Respondents. | B345765<br><br>(Los Angeles County Super. Ct. No. 22STCV28104) |

APPEAL from an order of the Superior Court of Los Angeles County, Tony L. Richardson, Judge.  Affirmed.

CGG Law Offices and Charles Gaitan Gomez for Plaintiffs, Cross-Defendants, and Appellants.

Lewitt, Hackman, Shapiro, Marshall & Harlan and Nicholas S. Kanter for Defendants, Cross-Complainants, and Respondents.

_____

In the proceedings below, the trial court granted a motion for terminating sanctions filed by respondents Adler Ventures, Inc. and Eric Adler, finding appellants Steve Javidzad and Laleh Javidzad violated multiple discovery orders.[1]  The Javidzads filed no opposition to the motion and did not appear at the hearing.  In granting the motion, the court dismissed the Javidzads' complaint with prejudice and struck Steve's answer to Adler Ventures's cross-complaint.  Adler Venture subsequently obtained a default judgment.

Almost six months later, the Javidzads moved for relief under Code of Civil Procedure section 473, subdivision (b) (Section 473(b)), arguing they failed to oppose the sanctions motion because their attorney did not receive it and did not know it had been filed.  The court denied the motion, finding the Javidzads failed to demonstrate the court granted the sanctions motion due to their attorney's mistake, inadvertence, surprise, or neglect.

On appeal, the Javidzads contend the trial court erred because their attorney admitted to his negligence, making relief mandatory.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    *The Complaints*

#### 1.    **The Javidzads' Complaints**

In August 2022, Steve and Laleh filed a complaint against Adler Construction, Adler Ventures, and Eric Adler, alleging

---

[1] Because appellants share a surname, we refer to them by their first name.

that, in March 2014, Steve entered into a written lease with Adler Construction to occupy a home in Beverly Hills at a monthly rent of $12,500.  Thereafter, on September 2, 2021, while Steve was in lawful possession of the property as his residence, the defendants wrongfully entered the property and changed the locks, thereby preventing Steve from entering.  They also "exercised wrongful dominion over and converted Steve and Laleh's personal property, furnishings, and other items seized by Defendants."  Based on these facts, Steve and Laleh alleged causes of action for: (1) wrongful eviction; (2) breach of written contract; (3) breach of covenant of quiet enjoyment; (4) negligence; (5) claim and delivery; and (6) conversion.  In August 2023, the Javidzads filed an amended complaint, listing the personal property they contend the defendants wrongfully took.

### 2.     Adler Ventures's Cross-Complaint

In January 2023, Adler Ventures filed a cross-complaint against Steve.  Adler Ventures alleged it was formerly known as Adler Construction and, in March 2014, entered into a written lease with Steve to occupy a home in Beverly Hills at a monthly rent of $12,500.  Adler Ventures claimed that, starting in December 2019, Steve stopped making full rental payments. Sometime thereafter, he claimed he could not pay rent because of COVID-19 and "signed a COVID-19 declaration under penalty of perjury, stating he could not pay rent due to: Loss of income caused by the COVID-19 pandemic, increased out-of-pocket expenses directly related to performing essential work during the COVID-19 pandemic, and other circumstances related to the COVID-19 pandemic that have reduced his income or increased his expenses."  Adler Ventures contended this claim of inability to

3

pay was false, alleging Steve "is the CEO and Founder of L&S Enterprises, a private real estate equity firm with $20 million of assets under management" and "on or about June 29, 2021, Steve closed escrow on a 4-bedroom, 5-bathroom, 4,921 square foot home in Bel-Air for $3.8 million."

Because Steve conducted unauthorized renovations to the floor of the leased home, "in November 2020, Adler served Steve with a Three Day Notice to Perform or Quit, demanding that Steve return the floor to its original condition, or vacate the Premises." After Steve refused to comply, Adler Ventures filed an unlawful detainer complaint.

In February 2021, Adler Ventures notified Steve the current lease expired on April 4, 2021, and Adler Ventures would not renew it. Nevertheless, Steve did not leave after the lease expired. Instead, he asked Eric Adler to meet him at the house to "coordinate" his moveout. "However, during the meeting on April 6, 2021, rather than coordinate his move from the Premises, Steve demanded that [Adler Ventures] pay him $400,000 to vacate the Premises." Adler Ventures alleged "the fair market rental value for the Premises from April 5, 2021 – August 31, 2021 was at least $35,340.75 per month."

In late August 2021, a few days before Adler Ventures's summary judgment motion in the unlawful detainer action was set for hearing, Steve vacated the property and moved into his new Bel Air home. Adler Ventures thereafter "obtained possession" and "secured the Premises."[2]

Based on these allegations, Adler Ventures brought causes of action for: (1) breach of written contract; (2) trespass;

---

[2] The record does not disclose how the unlawful detainer action was resolved.

(3) intentional misrepresentation; and (4) civil extortion. Steve answered the cross-complaint in March 2023.

## B. *Discovery*

### 1. Adler Ventures Files Several Motions to Compel

#### (a) First Set of Requests for Production to Steve

In February 2023, Adler Ventures served on Steve a first set of Requests for Production, consisting of seven requests, seeking documents relating to his claim he was unable to pay rent during the pandemic, the purchase of his new home in Bel Air, and the unauthorized floor renovation. Steve responded to the first six requests with "Production, inspection, and copying will be allowed, and all documents or things in this category in responding party's possession, custody, or control will be included in production." He did not respond to the seventh request.

In April 2023, Adler Ventures sent Steve a meet-and-confer letter, contending these responses were "evasive and incomplete" in that "they do not identify any documents whatsoever" and did "not specif[y] a date when the responsive documents will be produced." The letter also pointed out the failure to respond to the seventh request for production. Steve's attorney agreed to review the responses and "supplement where necessary by May 12."

On May 12, 2023, Steve's attorney stated Steve had been hospitalized and requested a further extension, which was granted. One month later, Adler Ventures's attorney informed Steve's attorney that Eric Adler had seen Steve walking around

5

town and requested he provide the promised supplemental responses; Steve's attorney stated he would provide them by June 23, 2023.

On June 23, 2023, Steve's attorney stated he was "collecting and will send all responsive documents to Request for Production in the next 10 days with identification of documents to corresponding requests." Instead, Steve supplemented by responding to the seventh request with: "Production, inspection, and copying will be allowed, and all documents or things in this category in responding party's possession, custody, or control will be included in production."

On July 5, 2023, Adler Ventures sent another meet-and-confer letter, repeating that the responses to the Requests for Production were not code-compliant. Adler Ventures received no further responses. On July 12, 2023, it filed a motion to compel further responses and documents in response to its first set of Requests for Production.

### (b) Form Interrogatories to Steve

In February 2023, Adler Ventures served on Steve a set of Form Interrogatories and a set of Requests for Admission. Among the Form Interrogatories posed was No. 17.1, asking Steve to state all facts and identify all witnesses and documents relating to any requests for admission he denied. In April 2023, Steve served responses.

Ten days later, Adler Ventures sent a meet-and-confer letter regarding Steve's response to Form Interrogatory No. 17.1, contending he "completely failed to provide a response for RFA 27, and the remainder of his responses consisted of one-line sentences which do not amount to a sufficient factual statement under the code. Furthermore, Plaintiff failed to identify

6

witnesses and documents for each of the RFA's under this interrogatory."

On June 23, 2023, Steve served supplemental responses to Form Interrogatory No. 17.1.  On July 5, 2023, Adler Ventures sent another meet-and-confer letter, explaining why the supplemental responses were still not code-compliant, and requesting further responses be provided by July 11, 2023.  Adler Ventures received no further responses.  On July 14, 2023, it filed a motion to compel further responses to Form Interrogatory No. 17.1.

### (c)    Second Set of Requests for Production to Steve

In May 2023, Adler Ventures served on Steve a second set of Requests for Production, consisting of three requests seeking his tax returns for 2019, 2020, and 2021.  Steve did not respond. On July 5, 2023, Adler Ventures sent a meet-and-confer letter, requesting responses be provided by July 11, 2023.  When Adler Ventures still received no responses, it filed a motion to compel responses and documents in response to its second set of Requests for Production.

In September 2023, Steve asked for the motion to compel to be taken off-calendar because he had "served fully compliant" responses to the second set of requests for production.  A copy of the responses was attached.  To the requests for tax returns for 2019 and 2020, Steve stated: "Production, inspection, and copying will be allowed, and all documents or things in this category in responding party's possession, custody, or control will be included in production."  To the request for his 2021 tax return, Steve said: "Unable to comply after diligent search and reasonable inquiry in an effort to comply because particular item or category has never

been in responding party's possession, custody, or control." The verification page was dated June 26, 2023.

In its reply, Adler Ventures asserted the responses were not served until the date of the opposition (i.e., September 20, 2023), the responses were not code-compliant, and Steve had yet to produce any documents.

### (d) Second Set of Special Interrogatories to Steve

On July 24, 2023, Adler Ventures served on Steve its second set of Special Interrogatories. Steve did not respond and, on September 28, 2023, Adler Ventures filed a motion to compel further responses to its second set of Special Interrogatories.

### (e) Discovery to Laleh

On August 23, 2023, Adler Ventures served on Laleh Special Interrogatories, Form Interrogatories, and Requests for Production of Documents. Laleh did not respond and, on September 28, 2023, Adler Ventures filed three motions to compel, one for each set of discovery.

### 2. The First Motion to Compel Hearing

On October 3, 2023, with both counsel present telephonically, the court denied as moot Adler Ventures's motion to compel responses to its second set of Requests for Production but ordered Steve "to produce all responsive documents within thirty (30) days." The court expressly warned Steve that if he failed to do so, "Defendant Adler Ventures may file a motion for monetary, issue, evidentiary, and terminating sanctions." The court also ordered Steve to pay monetary sanctions of $1,667.60. The court additionally ordered all remaining motion to compel

8

hearings continued to November 1, 2023, and ordered the parties to meet and confer about them by the next day. Thereafter, by October 16, 2023, the parties were to submit a joint statement informing the court of what issues were resolved and what issues remained for the court to decide. Adler Ventures gave notice of the court's order the next day.

### 3. The "Joint" Statement

On October 16, 2023, Adler Ventures submitted a statement outlining what it and the Javidzads agreed on in their meet-and-confer. Essentially, the Javidzads agreed to serve code-compliant responses without objection and produce documents as to all the discovery requests at issue in the motions to compel, by October 13, 2023. However, they did not. Adler Ventures further informed the court that, on October 16, it had sent the Javidzads a draft statement for them to "fill in their portion" in time for it to be filed with the court that day, but their counsel was "out of office" and suggested the parties file the statement a day later, which suggestion Adler Ventures declined.

### 4. The Javidzads Serve Some Responses and Oppose All Motions to Compel

On October 22, 2023, Laleh served responses to the discovery propounded on her. Additionally, Steve served responses to Adler Ventures's second set of Special Interrogatories. Steve served no supplemental responses, and neither Steve nor Laleh produced any documents.

The next day, the Javidzads opposed all remaining motions to compel, contending either that they had already served responses, or that their original responses were code-compliant.

9

Two days later, Adler Ventures replied to all the oppositions, pointing out both the discovery responses and the oppositions were untimely, explaining why many of the responses were not code-compliant, and asserting that the Javidzads still had not produced any documents.

### 5. The Court Mostly Grants the Remaining Motions to Compel

On November 1, 2023, the court mostly granted the remaining motions to compel. Specifically:

As to the discovery propounded on Laleh and the second set of Special Interrogatories propounded on Steve, the court ordered "verified responses without objections shall be served within thirty (30) days if they have not been served already" and warned "[i]f Plaintiffs fail to do so, Defendants may file a motion for monetary, issue, evidentiary, and terminating sanctions." The court also ordered Steve to pay monetary sanctions in the amount of $1,661.65 within thirty days.

As to the first set of Requests for Production propounded on Steve, the court ordered him to "produce all responsive documents within thirty (30) days and . . . provide a code-compliant response within thirty (30) days making clear that he has done so." The court also found "his failure to comply with his discovery obligations under these circumstances constitutes an abuse of the discovery process warranting sanctions" and ordered him "to pay Defendants, by and through counsel, the amount of $2,061.65 within thirty (30) days."

As to Form Interrogatory No. 17.1 propounded on Steve, the court ordered him to "provide code-compliant responses without objections within thirty (30) days" to portions of the interrogatory.

10

Adler Ventures gave notice of the court's order a week later.

### C.   *Motion for Terminating Sanctions*

On December 22, 2023, respondents moved for terminating sanctions.  They contended:

Steve violated the court's October 3, 2023 order because he "did not produce his tax returns by the Court's deadline."  After Adler Ventures contacted Steve's counsel to request the tax returns and gave him several more days to produce them, Steve "produced partial 2020 tax returns, but did not produce the 2019 tax returns, only a tax transcript for 2019."  Steve refused to produce the 2019 tax return and failed to pay the ordered monetary sanctions.

Steve also violated the court's November 1, 2023 order because, as regards to Form Interrogatory No. 17.1 and Adler Ventures's first set of Requests for Production, he "has not produced any responsive documents, served code-compliant responses, or paid monetary sanctions."

Laleh also violated the court's November 1, 2023 order because she "failed to serve compliant responses" and "failed to produce any documents."

The Javidzads did not oppose the motion.

On February 8, 2024, the court granted the motion.  The court found:  "As of the date of the motion, Plaintiffs have not produced any responsive documents or served code-compliant responses.  [Citation.]  Plaintiffs have not opposed the motion, and the record reflects no good cause for Plaintiffs' failure to comply with their discovery obligations.  The Court has considered whether lesser sanctions would facilitate Plaintiffs' compliance with their discovery obligations.  However, the Court

11

previously imposed monetary sanctions on two occasions, to no avail, and evidentiary and issue sanctions would not remedy the prejudice caused by Defendants failure to obtain necessary discovery."  Based on these findings, the court dismissed the Javidzads' complaint with prejudice and struck the answer to the cross-complaint.  That same day, the court served on the Javidzads' attorney an order of dismissal indicating the court had dismissed their action with prejudice.

Five days later, Adler Ventures served notice of the ruling. On February 20, 2024, at the request of Adler Ventures, the court clerk entered Steve's default.  On February 28, 2024, Adler Ventures filed and served documents seeking a default judgment against Steve.  On March 4, 2024, the court entered judgment in favor of Adler Ventures and against Steve for $707,914.02.  Later in March 2024, Adler Ventures requested a writ of execution and an abstract of judgment, both of which were served on the Javidzads' counsel.

### D. *The Javidzads Ask the Court to Set Aside Its Order Dismissing the Complaint and Its Judgment Against Steve*

#### 1. Motion

On August 2, 2024, the Javidzads moved under Section 473(b) "for a **mandatory order** granting relief from the February 8, 2024 Order, Dismissal of Complaint, Default on Cross-Complaint, and Default Judgment on Cross-Complaint entered on March 4, 2024 due to attorney fault resulting from attorney's mistake, inadvertence, surprise, or neglect for counsel's failure to timely receive the February 8, 2024 Motion for Terminating Sanction before the hearing."  The Javidzads

12

claimed their attorney failed to oppose the motion for terminating sanctions "because he never received and was aware of the Motion until after the February 8, 2024 hearing [*sic*]."[3]  They argued that "[d]ue to Plaintiffs' counsel's mistake, inadvertence, surprise, or neglect preventing opposition, Plaintiffs did not oppose the Motion, resulting in Dismissal of Plaintiffs' Complaint and Default Judgment on Defendants' Cross-Complaint."  They further argued the requested relief was mandatory.  However, they did not dispute they violated the court's discovery orders and provided no explanation as to why they had done so.  Nor did they attach any supplemental discovery responses to their motion, or any evidence they had produced any documents.

### 2. Opposition

In January 2025, Adler Ventures opposed the Javidzads' motion for relief, arguing: (1) "the order, default, and judgment were not caused by [the Javidzads' attorney] Mr. Gentino.  The Court dismissed Plaintiffs' complaint and entered judgment for Defendants/Cross-Complainants Eric Adler and Adler Ventures, Inc. ('Defendants') because Plaintiffs engaged in a misuse of the discovery process and violated multiple discovery"; (2) "the motion was not made within a reasonable time, as required by Code Civ. Proc. § 473"; and (3) "even if Mr. Gentino caused the default, dismissal, or resulting judgment, the motion should be denied because it is not in the proper form" in that "[i]n the context of a terminating sanctions motion, a request for mandatory relief under Code Civ. Proc. § 473(b) must be

---

[3] Neither the Javidzads nor their attorney ever explain when and how they became aware of the motion and the subsequent orders, dismissals, and judgment.

13

'accompanied by verified discovery responses in question' " and the Javidzads' motion was not so accompanied.

### 3.    Reply

In their February 2025 reply, the Javidzads argued: (1) "The Order, Dismissal, Default, and Default Judgment were caused by Mr. Gentino, as stated in his moving Declaration"; (2) "The motion was timely"; and (3) "Plaintiffs have provided all verified discovery responses and produced all responsive documents to Defendants."

Specifically, the Javidzads newly claimed: (1) Steve had produced his entire 2020 tax return and could not produce his 2019 tax return because he did not have it; (2) Laleh had served verified responses without objection to the discovery propounded on her; (3) Steve had served verified response without objection to the second set of Special Interrogatories propounded on him; (4) Steve's original responses to the first set of Requests for Production were not code-compliant because he had previously said "Production, inspection, and copying will be allowed" but did not indicate if production, inspection, and copying would be allowed in whole or in part, and he had remedied this defect by serving supplemental responses provided that "Production, inspection, and copying will be allowed in whole"; (5) the Javidzads' attorney "has prepared an email to Defendants' counsel with attached documents responsive to" their first set of Requests for Production[4]; and (6) the Javidzads' attorney "had

---

[4] The Javidzads' attorney stated he "accepts responsibility for his failure to produce all responsive documents within 30 days of the November 1, 2023 Order" without explaining *why* he was responsible for this failure.

14

begun drafting, but had failed to finalize and serve a" further supplemental response to Form Interrogatory No. 17.1, but attached such a response to his declaration accompanying the reply.[5]

### 4. Ruling

On February 26, 2025, the court denied the Javidzads' motion. The court found the Javidzads failed to "demonstrate the dismissal of Plaintiffs' complaint resulted from Counsel's mistake, inadvertence, surprise, or excusable neglect." Instead, "the Court imposed terminating sanctions because Plaintiffs disregarded this Court's October 3 and November 1, 2023 orders, in which the Court ordered Plaintiffs to provide discovery responses. Counsel fails to address the reasons why Plaintiffs failed to comply with those orders. As such, Counsel's explanation for his failure to oppose the motion for terminating sanctions does not show the Court's February 8, 2024 order resulted from Counsel's mistake, inadvertence, or excusable neglect when that sanction was imposed because of Plaintiffs' abuse of the discovery process." The court also noted the Javidzads failed to provide verified discovery responses with their motion. The court concluded: "Given the history of this action, in which Plaintiffs had ample opportunities to rectify the issues which compelled this Court to impose a terminating sanction and to make a case for setting aside the Court's February 8, 2024 order, Plaintiffs' reply brief and Counsel's

---

[5] In his accompanying declaration, the Javidzads' attorney stated: "I had begun drafting, but had never finalized and served a Further Supplemental Response to Form Interrogatories (set#1), Number 17.1, and don't know the reason why."

15

declaration attached to it do not add much clarity to support the notion the dismissal was Counsel's fault. Thus, they are insufficient to warrant granting Plaintiffs the relief they seek. Accordingly, the motion is denied."

The Javidzads timely appealed.

## DISCUSSION

The Javidzads' sole argument on appeal, without any citation to the record, is that the trial court abused its discretion in denying their motion for relief from default when their attorney "admitted to engaging in acts of neglect that resulted in multiple sanction orders, including, ultimately, terminating sanctions," and "[t]he neglect of counsel representing Appellants before the trial court is evident even in the very 473(b) motion Appellant's [*sic*] former trial counsel filed to relieve his former clients of the neglect that resulted in terminating sanctions." Under such circumstances, the Javidzads contend relief was mandatory. We disagree.

The court granted the motion for terminating sanctions because the Javidzads had "not produced any responsive documents or served code-compliant responses," and "the record reflects no good cause for Plaintiffs' failure to comply with their discovery obligations." In their motion to set aside the court's granting of the sanctions motion, the Javidzads entirely failed to address why they had not produced responsive documents or served code-compliant responses within the time limit set by the

16

court.  Instead, they focused only on why their attorney had not responded to the motion for terminating sanctions.[6]

Even were we to consider the belated arguments and evidence the Javidzads presented in and with their reply brief,[7] they still do not fully explain why the Javidzads were unable to comply with their discovery obligations in a timely fashion.  For example, while some verified discovery responses were included with the reply, the Javidzads did not explain why these responses were not served until February 2025, why Steve was unable to produce documents until February 2025, or why Laleh still had not produced any documents.  Without such explanations, the Javidzads failed to meet their burden to demonstrate the misconduct was solely their attorney's fault.  Relief under section

_____

[6] Even on that topic, their explanation was lacking.  While the Javidzads' attorney stated he did not receive the December 2023 motion for terminating sanctions, he did not explain why— as the attorney representing the plaintiffs—he never once bothered to check what was happening in the case in the more than eight months that passed between the filing of the sanctions motion and the Javidzads' request for relief.  Nor did he ever claim he had not received any of the other documents that would have alerted him to the proceedings, such as the notice of ruling regarding the sanctions motion, the notice of the court dismissing with prejudice the Javidzads' complaint, the default judgment prove-up package submitted by Adler Ventures, the request for writ of execution, and the abstract of judgment.

[7] " 'The general rule of motion practice . . . is that new evidence is not permitted with reply papers.' " (*Maleti v. Wickers* (2022) 82 Cal.App.5th 181, 227.)  This principle applies to new arguments as well, "particularly where the circumstances giving rise to the argument" were known when the motion was filed. (*Ibid.*)

473(b) "is available only when the attorney is *solely* responsible for the misconduct." (*Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1228.) Therefore, the court did not abuse its discretion in denying the Javidzads' motion.

## DISPOSITION

The court's order is affirmed. Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED

M. KIM, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.